UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF NEW YORK

---------------------------------------------------------------X

SHAYZON TAYLOR
MALIK QUICK
-against-

THE COMMISSIONER OF THE NEW YORK
STATE DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION (NYS DOCCS)
DANIEL F. MARTUSCELLO III,
THOMAS DELMAR, SUPERINTENDENT OF
MID-STATE CORRECTIONAL FACILITY
DONALD UHLER, SUPERINTENDENT OF
UPSTATE CORRECTIONAL FACILTY
SANDRA DANFORTH, SUPERINTENDENT OF
FRANKLIN CORRECTIONAL FACILITY
CORRECTION OFFICER MICHAEL GERHARDT,
CORRECTION OFFICER MICHAEL G. JONES,
CORRECTION OFFICER JONAH LEVI
CORRECTION OFFICER KODY PETRUS
CORRECTION OFFICER T. BORK
CORRECTION OFFICER T. DERBY
CORRECTION OFFICER R. HUNTLEY
CORRECTION OFFICER K. BOYER
CORRECTION OFFICER R. ONEIL
CORRECTION OFFICER B. CZEPIEL
CORRECTION OFFICER K. DILLON
CORRECTION OFFICER P. ROSS
CORRECTION OFFICER J. JOHNSON
CORRECTIONAL OFFICER NELSON
CORRECTIONAL OFFICER "S"
CORRECTIONAL SERGEANT COREY FLACK
CORRECTIONAL SERGEANT MICHAEL
MASHAW
DEPUTY SUPT/SECURITY ROGER MURPHY
CORRECTION OFFICER JOHN DOE 1-5
All Defendants are being pursued in both their
official and individual capacities

COMPLAINT
JURY TRIAL DEMANDED

9:26-CV-1137 GTS/CBF

---------------------------------------------------------------X

Comes now the Plaintiff SHAYZON TAYLOR and MALIK QUICK, by and through his

attorneys Jasper Mills, Esq. and Daniel R. Smalls, Esq. complaining of the Defendants the

following claims and state that:

## JURISDICTION

1. SHAYZON TAYLOR and MALIK QUICK brings this lawsuit under the United States Constitution, and pursuant to Title 42 U.S.C. § 1983 et. seq. and § 1988   This Court has subject matter jurisdiction of this lawsuit based on Title 28 U.S.C. §§133: (federal question) and §1343(3) (equal rights).

## VENUE

2. This Court is the proper venue for this lawsuit pursuant to 28 U.S.C. § 13?1(b)(1) because all the events complained of occurred within the Northern District of New York, and the Defendants are located within the Northern District of New York, and, upon information and belief, all of the Defendants reside within New York State.

## PARTIES

1. Plaintiff was an inmate committed to Mid-State Correctional Facility :n the State of New York when the incidents which gave rise to this Complaint occurred in Mid-State Correctional Facility.

2. Shayzon Taylor is an African-American male who currently resides in the State of New York and was an inmate within the New York State Department of Corrections as all times relevant to this Complaint.

3. Malik Quick is an African-American male who currently resides in the State of New York and was an inmate within the New York State Department of Corrections as all times relevant to this Complaint.

4. Defendant Daniel F. Martucello is the Commissioner of NYS Department of Corrections and Community Services (DOCCS) is a state agency responsible for the

operation of state correctional facilities, including Mid-State Correctional Facility, Upstate Correctional Facility and Franklin Correctional Facility.

5. Defendant Corrections Officer MICHAEL GERHARDT is a correctional officer employed by DOCCS at Mid-State Correctional Facility.

6. Defendant Corrections Officer MICHAEL G. JONES is a correctional officer employed by DOCCS at Mid-State Correctional Facility.

7. Defendant Corrections Officer JONAH LEVI is a correctional officer employed by DOCCS at Mid-State Correctional Facility.

8. Defendant Corrections Officer KODI PETRUS is a correctional officer employed by DOCCS at Mid-State Correctional Facility.

9. Defendant Corrections Officer T. BORK is a correctional officer employed by DOCCS at Mid-State Correctional Facility.

10. Defendant Corrections Officer T. DERBY is a correctional officer employed by DOCCS at Mid-State Correctional Facility.

11. Defendant Corrections Officer R. HUNTLEY is a correctional officer employed by DOCCS at Mid-State Correctional Facility.

12. Defendant Corrections Officer K. BOYER is a correctional officer employed by DOCCS at Mid-State Correctional Facility.

13. Defendant Corrections Officer R. ONEIL is a correctional officer employed by DOCCS at Mid-State Correctional Facility.

14. Defendant Corrections Officer B. CZEPIEL is a correctional officer employed by DOCCS at Mid-State Correctional Facility.

15. Defendant Corrections Officer K. DILLON is a correctional officer employed by DOCCS at Mid-State Correctional Facility.

16. Defendant Corrections Officer P. ROSS is a correctional officer employed by DOCCS at Mid-State Correctional Facility.

17. Defendant Corrections Officer J. JOHNSON is a correctional officer employed by DOCCS at Mid-State Correctional Facility.

18. Defendant Deputy Supt/Security Roger Murphy is employed by DOCCS at Mid-State Correctional Facility.

19. Defendant Corrections Officer MICHAEL GERHARDT is a correctional officer employed by DOCCS at Mid-State Correctional Facility.

20. Defendant Corrections Officer "S" is a correctional officer employed by DOCCS at Mid-State Correctional Facility.

21. Defendant CORRECTIONS SERGEANT COREY FLACK is a correctional officer employed by DOCCS at Mid-State Correctional Facility.

22. Defendant CORRECTIONS SERGEANT MICHAEL MASHAW is a correctional officer employed by DOCCS at Mid-State Correctional Facility.

23. Defendants Corrections Officers John Doe 1 - 5 are correctional officers employed by DOCCS at Mid-State Correctional Facility, Upstate Correctional Facility and Franklin Correctional Facility whose identities are currently unknown.

24. Defendant Thomas Delmar is the Superintendent at Mid-State Correctional Facility, a New York State correctional facility operated by DOCCS.

25. Defendant Donald Uhler is the Superintendent of Upstate Correctional Facility, a New

York State correctional facility operated by DOCCS.

26. Defendant Sandra Danforth is the Superintendent of Franklin Correctional Facility, a New York State correctional facility operated by DOCCS.

## PRELIMINARY STATEMENT

27. On September 20, 2023, at approximately 9:30am, at Mid-State Correctional Facility, Plaintiffs were severely beaten by defendants, while others stood by and refused to intervene. The incidents of September 20, 2023 apply to defendant corrections officers and sergeants at Midstate Correctional Facility.

28. This beating took place while Plaintiff Taylor was shackled and handcuffed behind his back and after the defendants took the Plaintiff in an area of the correctional facility without cameras and refused to activate their body cameras. The handcuffs applied to Plaintiff Taylor were so tight that they became embedded into his wrists causing open lacerations and protruding wounds. Plaintiff Quick was also handcuffed and assaulted throughout multiple areas of the facility.

29. Plaintiff Taylor was in fear of dying as a result of the beating at the hands of the defendants.

30. Defendants repeatedly punched, kicked, stomped and slammed Plaintiffs about their head and body while other defendants watched and refused to intervene.

31. While Defendants brutally beat Plaintiff Taylor, they stated to him "if you died nigger, we won't lose any sleep". Defendants were also instructing other

officers to break Plaintiff Taylor's legs, stating that he will "never play basketball again". The entire time the defendants refused to activate their body cameras. Throughout the assault of Plaintiff Quick defendants Boyer, "S", Oneil and Nelson are yelling racial slurs directed to Plaintiff Quick, including but not limited to "monkey" and "nigger".

32. Defendants also stabbed Plaintiff Taylor numerous times in the head with a serrated handcuff key in an attempt to kill Plaintiff Taylor.

33. As a result of this beating at the hands of defendants Plaintiff Taylor incurred numerous physical injuries inclusive but not limited to a displaced orbital socket, stab wounds to his head and an injury to his knee which requires replacement surgery, nerve damage to hands and fingers, scars and lacerations to his wrists and ankles, fractured bones, a brain bleed and brain damage, disfigurement to Plaintiff Taylor's face, head and body.

34. After Plaintiff Taylor was discharged from the hospital he was forced into solitary confinement.

35. Defendants further denied Plaintiff Taylor proper medical care and/or medication for his injuries. In fact, when Plaintiff Taylor was eventually taken for medical treatment, defendants requested that medical staff not give Plaintiff Taylor stiches because it would "leave a trail".

36. As a result of Plaintiff Taylor's wife reporting the defendant's failure to provide Plaintiff Taylor with proper medical care, the defendants issued Plaintiff Taylor a tier three ticket accusing Plaintiff Taylor of assault on staff in an attempt to place Plaintiff Taylor in solitary confinement once more.

37. These incidents occurred while the defendant officers and sergeants were under the supervision of Defendant Thomas Delmar.

38. Plaintiff Taylor was placed in solitary confinement in Upstate Correctional Facility for assault of staff at a time where Plaintiff Taylor was handcuffed and shackled.

39. As a result of the assault on staff allegations, Plaintiff Taylor also denied further programming at Upstate Correctional Facility and as a result lost his merit time causing Plaintiff Taylor additional and unwarranted incarceration.

40. All incidents that occurred while at Upstate Correctional Facility occurred while Defendant John Doe Corrections Officers were under the supervision of Defendant Donald Uhler.

41. All incidents that occurred while at Franklin Correctional Facility occurred while Defendant John Doe Corrections Officers were under the supervision of Defendant Sandra Danforth

42. Defendant John Doe Corrections officers at Upstate Correctional Facility lied to Plaintiff's wife about the loss of Plaintiff's merit time and denial of programming.

43. Defendants Corrections Officers and Sergeants at Midstate Correctional lied on use of force documents stating that Plaintiff Taylor was simply punched in the face twice.

44. Plaintiff Taylor was denied medical treatment by John Doe Corrections Officers while at Upstate Correctional Facility and was subsequently sent to Frankin Correctional Facility where he was further denied proper medical care

for the injuries sustained as a result of the defendants' actions.

45. On the weekend after the incident Plaintiff Taylor's wife called Midstate Correctional Facility and spoke to staff who identified himself as a Sergeant in the watchtower and inquired into her husband's safety and why she has not had any contact with her husband. Plaintiff's wife was told that Plaintiff Taylor was perfectly fine and that he was in the dorm and hung up on Plaintiff's wife. Meanwhile Plaintiff Taylor had been rushed to the hospital with serious physical injuries and then forced into solitary confinement.

46. Plaintiff Taylor has suffered severe mental and emotional distress due to the actions of the defendants.

47. On September 20, 2023 Plaintiff Quick was returning to his dorm from picking up cleaning supplies when he was approached by Defendant Flack and told to get up against the wall and at that time Plaintiff Quick was patted down by Defendant Boyer. During this pat down, defendant Boyer kicked Plaintiff Quick's feet out from the wall. At that time defendant Nelson tells Plaintiff Quick that if he moves, they will assume that he is trying to assault the officers and that they will have fun putting him down.

48. Plaintiff Quick was told by Defendant Flack to pick up his things that had fallen to the ground and to go back into the dorm. Plaintiff complied and while walking into the dorm Plaintiff Quick was slapped in the back of his head, kicked in his buttocks and pushed into the dorm by Defendant Flack.

49. At that point other officers not limited to Defendants Flack, Boyer, Nelson and

"S" entered the dorm and began to accuse Plaintiff Quick of being involved in gang activities. After Plaintiff Quick denied being a part of any gang defendant "S" stated to Quick, "stop fucking lying all you niggers are apart of scme gang".

50. Plaintiff began to make a phone call to his family and when defendant "S' noticed Quick on the phone he stated to Plaintiff Quick, "what are you about to snitch"? At that moment defendant "S" terminated the phone call and defendant Derby told Plaintiff Quick to get his "stupid ass" outside now.

51. Plaintiff Quick knew that this order was most likely to end in him being assaulted and requested that the officers turn on their body cameras if he were to agree to go outside. This request was denied.

52. At that point Defendant Oneil deployed pepper spray into the face of Plaintiff Quick and Plaintiff Quick is rushed by defendants and punched about the body and face prior to being handcuffed and dragged out of the dorm.

53. Plaintiff Quick is then dragged out of the dorm and slammed against a van before being brought back into the building and assaulted.

54. Plaintiff Quick, still handcuffed, is then punched about the head and body multiple times and slammed to the ground by Defendants "S", Derby, Boyer, Oneil and Nelson.

55. Once on the ground the same defendants continue to punch and kick Plaintiff Quick about the head, face, body and back. The same defendants are also jumping onto Plaintiff Quick's back at this time. All of this occurred in the

presence of other correctional officers, including Sgt. Flack, who failed to intervene.

56. Plaintiff Quick was then pick up by the same defendants and slammed against the walls and door frames several times before being thrown into a van.

57. When Plaintiff Quick arrives at medical, he is approached by defendant Murphy. Murphy tells Quick that he "lost his mind" and that he is a "dead man".

58. Murphy then asks Quick "are you gonna hold us down"? In other words, Murphy asks Quick if he intends on reporting the assault. When Quick agreed not to report the assault Murphy says to Quick, "that's a good boy" and slaps Quick in the face. Quick is then taken to Upstate Correctional Facility and placed into the box.

59. Defendant Officers charged Plaintiff Quick with two counts of assault on staff alleged to have occurred at the same exact time, on two different officers, while at two different locations within the facility and all at a time that Plaintiff Quick was handcuffed. Plaintiff Quick was also charged with disorderly conduct and inciting a riot.

60. As a result of these charges, Plaintiff was sentenced to 520 days in solitary confinement.

61. Plaintiff Quick was also denied outside medical attention and mental health services while in solitary confinement.

62. These incidents occurred while the defendant officers and sergeants were under the supervision of Defendant Thomas Delmar.

63. In this instance, the plaintiffs assert that both the Commissioner or Corrections and the Superintendents at the respective correctional facilities captioned above are as equally liable at the defendant officers involved due to their failure to train or supervise the said officers adequately; this failure caused the officers' unconstitutional actions and constituted deliberate indifference to the inmate's constitutional rights . Cozzo v. Tangipahoa Parish Council-President Gov't, 262 F.3d 501 (2001), Heishman v. Jail Adm'r Gina Butler, 2023 U.S. Dist. LEXIS 130128 (2023), McNeal v. LeBlanc, 90 F.4th 425 (2024)

64. The plaintiffs assert that the Commissioner and respective superintendents created, applied, or maintained policies or customs that led to the violations. Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062 (2013), Arnett v. Norris, 160 F.4th 921 (2025), Douglas v. Yates, 535 F.3d 1316 (2008), Bridges v. Poe, 155 F.4th 1302 (2025). And implemented or maintained policies that encouraged or tacitly authorized such misconduct. Arnett v. Norris, 160 F.4th 921 (2025), Douglas v. Yates. 535 F.3d 1316 (2008), Bridges v. Poe, 155 F.4th 1302 (2025).

65. Under the circumstances, it is clear that defendants Martuscello and the respective superintendents failed to adequately train and/or supervise the defendant corrections officers and maintained policies and/or informal customs that acquiesced to the misconduct which caused a deprivation of the Plaintiffs' constitutional rights. It is clear that their positions of authority place them in the position to have the ability to stop and/or prevent these violations, and they have an affirmative duty to do so.

66. The Plaintiffs would further assert that the same defendants, at the very least had constructive knowledge of unconstitutional conduct based upon the numerous complaints and lawsuits involving similar misconduct from other officers not only in Midstate Correctional Facility but in prisons across the state of New York. Mesa v. Prejean, 543 F.3d 264 (2008), Bridges v. Poe, 155 F.4th 1302 (2025), Baynard v. Malone, 268 F.3d 228 (2001).

67. The Plaintiffs assert that the defendants were grossly negligent in the supervision of these subordinates in that they failed to take action that a reasonable supervisor would find necessary to prevent the risk. Poe v. Leonard, 282 F.3d 123 (2002), Chamberlain v. City of White Plains, 960 F.3d 100 (2020), Felix-Torres v. Graham 687 F. Supp. 2d 38 (2009), Campo v. City of New York, 2022 U.S. Dist. LEXIS 60288 (2022).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**42 U.S.C. Section 1983 Violation of Plaintiffs' Rights Guaranteed Under 4th and 14th Amendments to the U.S. Constitution to Be Free from False Arrest and False Imprisonment.**

68. Plaintiffs repeat and reiterate the allegations set forth in paragraphs 1 – 67 as if the averments therein were fully set forth herein.

69. At the time of Plaintiffs' interaction with the Defendants on September 20, 2023, Plaintiffs had committed no arrestable offense.

70. Based upon the false allegations made by the Defendants Plaintiffs were charged and found guilty of assault on staff violations, despite the fact that the Plaintiffs were shackled and handcuffed at the time of the alleged assault.

71. Plaintiffs were not provided a fair hearing as they were denied exculpatory evidence in the form of video footage of the defendants taking the Plaintiffs to a hallway of the facility without cameras, prior to the Defendants entering judgment against Plaintiffs.

72. Plaintiff Taylor was placed in solitary confinement and lost all of his programming, which in turn caused Plaintiff to miss his merit release date of March 7, 2025.

73. Plaintiff Quick was ordered to 520 days of solitary confinement, lost all programming and missed his merit date.

74. The Plaintiffs respectfully assert that due to the hardship caused to the Plaintiff by the defendants, their claims are proper.  As a result of the actions taken by the defendants, the plaintiffs suffered a deprivation of a protected liberty interest.

75. In this instance a liberty interest is implicated both because of the length of the confinement and the effects on the plaintiff's sentence.

76. Defendants' actions in falsely accusing Plaintiffs of assault on staff violations, finding them guilty without evidence, and forcing them into solitary confinement for a prolonged period of time constituted false imprisonment and false arrest in violation of the Fourth and Fourteenth Amendments.

77. Plaintiffs were physically assaulted and restrained during the false arrest committed by the Defendants.

78. Based upon the foregoing the Defendants intended to, and did, arrest Plaintiffs. Plaintiffs did not consent to his arrest and imprisonment which was without probable

cause and violated Plaintiff's rights Under the 4th and 14th Amendments to the U.S. Constitution.

79. Plaintiffs have been damaged as a result of Defendants' false arrest and false imprisonment in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### 42 U.S.C. Section 1983 Violation of Plaintiffs' Rights Guaranteed Under 8th, 4th and 14th Amendments to the U.S. Constitution to Be Free from the Use of Unreasonable and Excessive Force by Law Enforcement Officers

80. Plaintiffs repeat and reiterate the allegations set forth in paragraphs 1 –79 as if the averments therein were fully set forth herein.

81. Defendants' actions in repeatedly punching, kicking, stomping and slamming the Plaintiffs about their heads and bodies constituted excessive force in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

82. The Defendants struck, hit and physically abused Plaintiffs, who were at a severe physical disadvantage and sustained multiple injuries during the physical encounter directed at them by the Defendants.

83. The Defendants' acts were totally unwarranted. Plaintiffs, which are both African-American men, were physically assaulted, suffered physical injury and placed in fear of serious physical injury or death as a result of the actions committed by Defendants.

84. Based upon the foregoing, the Defendants intended to, and did, physically assault Plaintiffs, without consent or justification in violation of Plaintiffs' rights under the 8th, 4th and 14th Amendments of the U.S. Constitution, said assault which was unjustified.

85. Plaintiff has been damaged as the result of Defendants' physical assault and excessive force in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### 42 U.S.C. Section 1983 Violation of Plaintiffs' Rights Guaranteed Under 4th and 14th Amendments to the U.S. Constitution to Be Free from Malicious Prosecution

86. Plaintiffs repeat and reiterate the allegations set forth in paragraphs 1 – 85 as if the averments therein were fully set forth herein

87. Based upon the false allegations made by Defendants, the Plaintiffs were charged and found guilty of assault on staff after a hearing, which was alleged to have occurred at a time when the Plaintiff was handcuffed and shackled and at times where it would have been physically impossible.

88. Plaintiffs were denied exculpatory evidence in the form of video footage of the defendants taking the Plaintiffs to a hallway of the facility without cameras, prior to the Defendants entering judgment against Plaintiffs.

89. Plaintiffs was placed in solitary confinement, lost all of their programing and as a result missed their merit release date.

90. Defendants' actions in falsely accusing Plaintiffs and finding them guilty without evidence constituted malicious prosecution in violation of the Fourth and Fourteenth Amendments.

91. Plaintiffs have been damaged as the result of Defendants' malicious prosecution in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### *Monell* Claim against the New York State Department of Corrections, Mid-State Correctional Facility, Upstate Correctional Facility and Franklin Correctional Facility

92. Plaintiffs repeat and reiterate the allegations set forth in paragraphs 1 –91 as if the averments therein were fully set forth herein.

93. Defendant Martuscello is the Commissioner of (DOCCS) and responsible for the operation of state correctional facilities, including Midstate Correctional, Upstate Correctional and Franklin Correctional, and thus responsible for the training and supervision of Defendants Delmar, Danforth and Uhler, the Superintendents of said facilities.

94. Defendants Corrections Officers and Sergeants at Midstate Correctional Facility are employed by NYS Department of Corrections and Community Supervision (DOCCS) and Midstate Correctional Facility, and under the supervision of Defendant Delmar, and at all times material to the averments of the complaint. The Defendants were acting within the scope of their employment.

95. Defendants John Doe Corrections Officer at Upstate Correctional Facility are employed by NYS Department of Corrections and Community Supervision (DOCCS) and Upstate Correctional Facility, under the supervision of Defendant Uhler, and at all times material to the averments of the complaint. The Defendants were acting within the scope of their employment.

96. Defendants John Doe Corrections Officer at Franklin Correctional Facility are employed by NYS Department of Corrections and Community Supervision (DOCCS) and Franklin Correctional Facility, and under the supervision of Defendant Danforth, and at all times material to the averments of the complaint. The Defendants were acting within the scope

of their employment.

97. Defendants Martuscello, Delmar, Uhler and Danforth failed to train, supervise, instruct, and/or monitor their employees, and as a result a culture was created acquiescing to the conduct of the above listed Defendant Correction Cfficers and staff at Mid-State, Upstate and Franklin that subjected the Plaintiff to excessive force, unreasonable force, false imprisonment, false arrest, malicious prosecution denied Plaintiff medical services and mistreated Plaintiff.

98. Defendants Martuscello, Delmar, Uhler and Danforth did not assure that their officers and facilities would not discriminate and violate the rights of the Plaintiff.

99. Plaintiff Taylor has been damaged as a result of the Defendants Martuscello, Delmar, Uhler and Danforth's failure to train, supervise, instruct and/or monitor the Officers in an amount to be determined at trial.

100.    Plaintiff Quick has been damaged as a result of the Defendant Martuscello, Delmar's failure to train, supervise, instruct and/or monitor the Officers in an amount to be determined at trial.

## FIFTTH CAUSE OF ACTION

### Failure to Intercede Claims against the Individual Officers

101.    Plaintiffs repeat and reiterate the allegations set forth in paragraphs 1 –101 as if the averments therein were fully set forth herein.

102.    That the above-captioned defendant correction officers each had reason to know that the other had committed various violation of Plaintiffs' rights under the U.S. Constitution and, despite being present at the time of those violations and having a realistic opportunity to intervene to prevent such harm from occurring, the Defendant

officers failed to intervene to prevent and infringement of Plaintiffs' rights under the U.S. Constitution.

103.    Plaintiffs have been damaged, in an amount to be determined at trial, as a result of the failure of each of the above-captioned defendant correction officers to intervene and protect Plaintiff from violations of his rights under the U.S. Constitution.

## SIXTH CAUSE OF ACTION

### Cruel and Unusual Punishment in Violation of the Eighth Amendment

104.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 –103 as if the averments therein were fully set forth herein.

105.    Defendants' actions in denying Plaintiffs sufficient medical services for the injuries sustained at the hands of the defendants constitute a violation of their Eighth Amendment rights protecting them against cruel and unusual punishment.

106.    Defendants' actions in denying Plaintiff Quick sufficient mental health services subsequent to the injuries sustained at the hands of the defendants constitute a violation of his Eighth Amendment rights protecting him against cruel and unusual punishment.

107.    Defendants' actions constitute a deliberate indifference to the serious medical needs of the Plaintiff. Hall v. Chandra 2005, Stout v. Rees 2005.

108.    Defendants further violated their obligations under federal law by failing to provide the Plaintiffs with adequate medical care. Williams v. Cearlock, 993 F.Supp. 1192.

109. Plaintiffs have been damaged as the result of Defendants' Cruel and Unusual Punishment in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

110. Plaintiffs repeat and reiterate the allegations set forth in paragraphs 1 –109 as if the averments therein were fully set forth herein.

111. Defendants' actions in subjecting Plaintiffs to excessive force, physical assault, false imprisonment, false arrest, malicious prosecution, denial of due process and cruel and unusual punishment inclusive of Defendants' refusal to provide the Plaintiffs with sufficient medical and/or mental health treatment caused Plaintiffs severe emotional distress, for which Defendants are liable under New York State law.

## EIGHTH CAUSE OF ACTION
## 42 USC §1983 ASSAULT

112. Plaintiffs repeat and reiterates the allegations set forth in paragraphs 1 – 111 as if the allegations therein were fully set forth herein.

113. Defendants, acting under color of New York State Law, struck, hit and physically abused Plaintiffs without any justification.

114. The Defendants struck, hit and physically abused Plaintiffs, who were at a severe physical disadvantage to the Defendants. As a result of the physical encounter directed at Plaintiffs by the Defendants, Plaintiffs sustained physical injuries.

115.    By these actions, the Defendants intentionally violated Plaintiffs' rights protected by the 4th and 14th amendments to the U.S. Constitution which guarantee that Plaintiffs would be free from the use of unreasonable and excessive force by law enforcement officers.  Consequently, defendants are liable to Plaintiffs for the injuries which were directly and proximately caused by the Defendants while acting within the scope of the Defendants' authority.

116.    Plaintiffs have been damaged as the result of the Defendants' assault in an amount to be determined at trial.

## NINETH CAUSE OF ACTION
## 42 USC §1983 BATTERY

117.    Plaintiffs repeat and reiterate the allegations set forth in paragraphs 1 – 116 as if the allegations therein were fully set forth herein.

118.    There is a federal cause of action for battery when law enforcement officers assault a civilian, and such a claim can be brought under . 42 USCS § 1983. This statute provides a remedy for individuals whose federal constitutional or statutory rights have been violated by persons acting under color of state law . 42 USCS § 1983, Corcoran v City of New York, 186 A.D.3d 1151.

119.    Under , 42 USCS § 1983. a plaintiff may assert a claim for battery if the alleged conduct involves a violation of constitutional rights, such as the Fourth Amendment's prohibition against unreasonable seizures.

120.    In New York, courts have recognized that assault and battery claims can serve as the basis for a § 1983 action when the conduct involves excessive or gratuitous use of

force by law enforcement officers acting under color of state law. For example, in ,
Corcoran v City of New York, 186 A.D.3d 1151. the court held that a party may
allege assault and battery as the basis for a § 1983 claim, provided the conduct
constitutes a violation of federal constitutional rights . Corcoran v City of New York,
186 A.D.3d 1151.

121.    Similarly, in , Harrison v. Inc. Vill. of Freeport, 498 F. Supp. 3d 378. *the court
noted that excessive force claims under* 42 USCS § 1983. *and state law assault and
battery claims are nearly identical, except for the requirement under* 42 USCS §
1983. *that the tort be committed under color of state law .* Harrison v. Inc. Vill. of
Freeport, 498 F. Supp. 3d 378.

122.    The defendant officers, acting under color of New York State Law, struck, hit
and physically abused Plaintiffs and subjected them to an unwarranted application of
force causing bodily injury or offensive contact in violation of his Fourth, Eighth and
Fourteenth Amendment rights.

123.    Battery is an unlawful application of force directly or indirectly upon another
person or their personal belongings, causing bodily injury or offensive contact.

124.    The Defendants struck, hit and physically abused Plaintiffs, who were at a severe
physical disadvantage to the Defendants.  As a result of the physical encounter
directed at Plaintiffs by the Defendants, in which Plaintiffs were struck, thrown,
pulled and slammed, Plaintiffs sustained physical injuries.

125.    Based upon the foregoing the defendants intended to batter the plaintiffs, who did
not consent to being battered or assaulted, which was unjustified.

126.    Plaintiffs have been damaged as the result of the Officers' battery in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly and severally on the following causes of action:

1.    As and for a First cause of action, damages in an amount to be determined at trial, but no less than ten million dollars for each Plaintiff as against the Defendants jointly and severally;

2.    As and for a Second cause of action, damages in an amount to be determined at trial, but no less than ten million dollars for each Plaintiff as against the Defendants jointly and severally;

3.    As and for the Third cause of action, damages in an amount to be determined at trial, but no less than ten million dollars for each Plaintiff as against the Defendants jointly and severally;

4.    As and for a Fourth Cause of Action against Defendants damages in an amount to be determined at trial, but no less than ten million dollars for each Plaintiff as against the Defendants jointly and severally;

5.    As and for the Fifth Cause of Action damages in an amount to be determined at trial, but no less than ten million dollars for each Plaintiff as against the Defendants jointly and severally;

6.    As and for the Sixth cause of action, damages in an amount to be determined at trial, but no less than ten million dollars for each Plaintiff as against the Defendants jointly and severally;

7.    As and for the Seventh cause of action, damages in an amount to be determined at trial, but no less than ten million dollars for each Plaintiff as against the Defendants jointly and severally;

8.    As and for the Eighth cause of action, damages in an amount to be determined at trial, but no less than ten million dollars for each Plaintiff as against the Defendants jointly and severally;

9.    As and for the Nineth cause of action, damages in an amount to be determined at trial, but no less than ten million dollars for each Plaintiff as against the Defendants jointly and severally;

10.     Plaintiffs also seek Punitive Damages for Defendants' actions which were taken against Plaintiffs with callow disregard for Plaintiffs' rights under the U.S. Constitution;

11.     Plaintiffs also seek Attorneys' fees and costs pursuant to 42 U.S.C. Section 1988;

12.     Plaintiffs also seek such other and further relief as the Court deems just and proper;

13.     Plaintiffs demand a trial by jury.

Dated: May 15, 2026

Respectfully submitted,

By: Jasper L. Mills, Esq.
Bar Roll No. 702687
Attorney for Plaintiff
Albany, NY 12305
518-265-5494
Millslawgroup@outlook.com

By: Daniel R. Smalls, Esq.
Bar Roll No: 702208
Attorney for Plaintiff
Schenectady, NY 12305
518-709-0024
Dsmalls@smallslaw.net